Slingluff *v.* Dennis (et al., Appellant).

92

Argued November 13, 1953.  Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-
NOLD, JJ.

reargument refused January 25, 1954.

*Bruce R. Martin,* with him *Dalzell, Pringle, Bredin & Martin,* for appellant.

*Robert B. Ivory,* with him *H. E. McCamey, Evans, Ivory & Evans* and *Dickie, McCamey, Chilcote, Reif & Robinson,* for appellees.

OPINION BY MR. JUSTICE JONES, January 4, 1954:

The plaintiffs, Walter U. Slingluff, his wife, Ruth L., and his son, John W., instituted actions in trespass against Jean B. Dennis to recover damages for personal injuries suffered by them in a collision of automotive vehicles allegedly caused by the defendant's negligence. Later, but within the statutory period of limitations, the plaintiffs, by amendment averring Dennis's agency, brought upon the record as additional defendants Dennis's alleged principals, Austin J. Cable and the Calack Company, an Ohio corporation. Cable and the Calack Company filed separate answers denying Dennis's agency. Upon trial, the jury returned a verdict for each of the plaintiffs against all of the defendants. The court en banc granted Cable's motion for judgment n.o.v. but denied the motions of the other defendants for a new trial and for judgment n.o.v. except as to Ruth L. Slingluff. In respect of her action, the court granted a new trial unless she filed a remittitur of so much of the verdict in her favor as

exceeded $200 which she duly filed. The court then entered judgments on the verdicts from which the Calack Company has appealed, assigning for error insufficiency of the evidence to impose liability on the appellant, various rulings of the trial judge, inadequacies of the charge, and excessiveness of the verdict in favor of John W. Slingluff. The defendant Dennis has not appealed.

It is unnecessary to relate in detail the facts, as testified to by the plaintiffs, concerning the happening of the accident. They are undisputed. Dennis drove his truck, laden with oil drums, into the rear of Walter Slingluff's disabled automobile parked at the side of a twenty-five foot main highway. The force of the truck's impact rammed the Slingluff car forward into the automobile of Walter's son, John Slingluff, parked immediately ahead, catching Walter and John between the bumpers of their automobiles where they were fastening a towline. Both were injured seriously. Mrs. Slingluff, who was sitting in her husband's car, sustained minor injuries. There is not the slightest doubt that the evidence justifies a finding that the accident was the result of negligence on the part of Dennis.

The one important dispute in the case is as to the nature of the relationship between Dennis on the one hand and the Calack Company on the other. Cable was the president and owner of one-half of the stock of the Calack Company which was a close family corporation engaged in the general contracting business. Dennis was the holder of an oil and grease distributorship from a Pittsburgh oil company and, trading as J. B. Dennis Products Company, he sold oil and grease to Calack for its use. About December 1, 1949, Dennis and Cable, acting for Calack Company, met to consider the possibility of forming a business association between the two concerns. Dennis was interested

in obtaining financing for his distributorship and Calack Company, whose contracting business was seasonal, was looking for an additional business interest. As a result of their negotiations, Calack Company and Dennis, according to the latter, on December 15, 1949, entered into a business association for the sale of oil and grease. Cable denied this. But, the evidence in the case fully warranted the jury in accrediting Dennis's version. In fact, the drums of oil which Dennis was transporting at the time of the accident for delivery to customers had been purchased by him in Pittsburgh with certified checks supplied by Calack Company and drawn to the order of the wholesaler. Furthermore, Cable, on December 23rd, upon learning of the accident, called the police in Sewickley, in the vicinity of the accident, and told the police officer that he (Cable) owned the oil company and the drums of oil being transported by Dennis. A Calack Company truck was used to retrieve the drums dumped on the highway as a result of the collision.

On the basis of the evidence, of which the above is but a brief summary, the jury was clearly justified in finding that on December 23, 1949, a business relationship existed between the Calack Company and Dennis which constituted the latter the agent of Calack in respect of the transportation of the oil cargo aboard Dennis's truck at the time of its collision with the Slingluff automobile.

In support of its motion for judgment n.o.v., the appellant argues that the plaintiffs failed to plead or prove a joint enterprise or partnership between Calack Company and Dennis and that they made no attempt to amend (nor could they any longer amend) their complaint wherein the averred relationship between Calack Company and Dennis was one of agency. However, failure to plead a joint enterprise is not fatal to

the plaintiffs' claims. The averment of agency in the amended complaint gave Calack Company adequate notice that the plaintiffs claimed the company was liable to them in some way for Dennis's negligence. The common law rule that a plaintiff who pleaded joint liability of defendants could not recover against any defendant unless he proved that all were jointly liable was abrogated in Pennsylvania by the Joint Suit Act of June 29, 1923, P. L. 981, 12 PS §§685, 686. As was said in *Schuster v. Largman,* 318 Pa. 26, 34, 178 A. 45,—"Undoubtedly the [Joint Suit] Act of 1923 contemplated that the statement of claim should affirmatively show such facts as would indicate some liability as to each and every defendant named, but postpones the determination as to whether or not the liability is joint or several until the time of trial." While the Joint Suit Act was suspended by Rule 2250 of the Pennsylvania Rules of Civil Procedure, Rule 2232 (d) is an adaptation of that Act and "extends the policy of [the Joint Suit] Act by providing that regardless of the nature of the liability pleaded by the plaintiff he may recover against any defendant who is proven to be liable to the plaintiff regardless of the nature of the liability proven." See 4 Anderson, Pennsylvania Civil Practice, p. 378.

Nor is the appellant in position to plead variance between the allegata and the probata. To take advantage of any such variance, "objection must be made (1) when the testimony not covered by the pleadings is offered; (2) by a motion for nonsuit, assigning the divergence as the reason; or (3) by a point for binding instructions in which the reason is assigned. If, however, no objection is made to the testimony, and the specific reason is not assigned on the motion for a nonsuit or in the point for instructions, then the defendant, having taken his chance of a favorable ver-

dict, may not thereafter raise the question. See *Kehres v. Stuempfle et al.*, 288 Pa. 534, 538": *Pennsylvania Railroad Company v. Pittsburgh*, 335 Pa. 449, 457-458, 6 A. 2d 907. In the instant case Calack Company did not assert the variance until after verdict. Its waiver of it was, therefore, complete.

The appellant further contends that proof of Austin Cable's authority to act for the Calack Company is lacking. It is argued that the president of a corporation has no power to embark his corporation upon any business enterprise he may select without appropriate corporate approval, citing *Bershad v. Chester Nest No. 1228, Order of Owls of Chester, Pennsylvania*, 364 Pa. 393, 72 A. 2d 116; *Blumberg v. Broad Street Trust Company*, 329 Pa. 471, 198 A. 27; and *Kelly, Murray, Inc. v. Lansdowne Bank & Trust Co.*, 299 Pa. 236, 149 A. 190. None of the cases cited was concerned with a family or otherwise closely held corporation. Moreover, Cable himself testified, "Well, after all, I am the Calack Company . . ." And, as will be recalled, in calling the Sewickley police on the night of the accident. Cable stated that he was the owner of the oil company. Cable's father, the only other stockholder of Calack, when told of the projected business arrangement between Calack and Dennis, assured the latter,—"It's all right if you and Jack [Austin Cable] want to do this." This testimony, if believed, was sufficient to support a jury's finding that Cable was authorized to and did act in the matter for the Calack Company.

The appellant next asserts that the court's charge to the jury was misleading and erroneous and failed to cover the evidence and applicable law. The alleged deficiencies in the charge, as urged by the appellant, are that the trial judge (1) failed adequately to define a joint enterprise, (2) neglected to state specifically

that any business relationship between Dennis and
Calack had to exist on December 23, 1949, the day of
the accident, (3) charged that negligence had been
practically admitted without limiting the imputation
to Dennis, (4) expressed the opinion that the Sling-
luffs were not guilty of contributory negligence, (5)
failed to explain to the jury Cable's contention that
the Calack checks to the wholesale supplier of oil
were loans to Dennis, and (6) that the charge was
unduly favorable to the plaintiffs. There is no merit in
any of these contentions which, in several instances,
are diametrically opposed to the record facts. What the
court told the jury as to the nature of a joint enter-
prise was sufficiently enlightening, especially, inas-
much as the outstanding difference between a joint
enterprise or joint adventure and a partnership, which
the court clearly defined, is that the former relates to
a single transaction (even though extended over a
considerable period of time) while the latter connotes
a more or less general and continuing association for
business purposes: see 30 Am. Jur., Joint Adventures,
§ 5; 48 C.J.S., Joint Adventures, § 1 (6). The trial
judge expressly posed as "the very important question
for [the jury] to determine, whether or not there was
a business relationship, that is a partnership or a
joint enterprise, on December 23, 1949, the night of the
accident." True enough, the court did tell the jury
that Dennis, by his counsel, had all but admitted
negligence but immediately added,—"that is, as far
as J. B. Dennis is concerned." The expression as to
the Slingluffs' freedom from contributory negligence,
the court qualified by telling the jury,—"I have my
opinion about that fact but that is not controlling.
The facts in a case like that are for you." Twice in the
charge, the court summarized Cable's explanation of
Calack's checks to the wholesale supplier for the oil

obtained by Dennis with complete fairness to Cable's contention. Read as a whole, the charge was a clear, full and impartial presentation of a fairly complicated set of facts.

Finally, the appellant complains that the verdict in favor of John W. Slingluff is excessive. At the time of the accident he was a gainfully employed young man of 24 enjoying good health, being a veteran of naval service. No point will be served in recounting the injuries he received to both legs and, particularly, the painful, partially incapacitating and permanent injury to his left leg. The learned court below said that its sense of justice was not shocked by the size of the verdict in John's favor, and neither is ours.

The judgments are affirmed.