**PENN MART REALTY COMPANY, a corporation of the Commonwealth of Pennsylvania, Plaintiff,**

v.

**Isadore A. BECKER et al., Defendants.**

Court of Chancery of Delaware, New Castle.

Nov. 29, 1972.

------◆------

Irving Morris, and Joseph A. Rosenthal, of Cohen, Morris & Rosenthal, Wilmington, for plaintiff.

Hugh Corroon, and E. D. Griffenberg, Jr., of Potter Anderson & Corroon, Wilmington, for defendants Investors Diversified Services, Inc., and Investors Variable Payment Fund, Inc.; Donovan, Leisure, Newton & Irvine, and Davis, Polk & Wardwell, New York City, of counsel.

Howard M. Handelman, of Bayard, Brill & Handelman, Wilmington, for defendant Glen Alden Corp.

SHORT, Vice Chancellor:

This is a derivative suit brought on behalf of Glen Alden Corporation (Glen Alden), a Delaware corporation, by one of its stockholders, Penn Mart Realty Co. (Penn Mart). The individual defendants are the board of directors of Glen Alden. The corporate defendants are Investors Diversified Services, Inc. (IDS), a Minnesota corporation; Investors Variable Payment Fund, Inc. (Investors), a Nevada corporation; and Carter, Berlind & Weill, Inc. (Carter), a Delaware corporation. IDS is a securities broker-dealer and principal underwriter and investment manager of Investors, an open-end diversified investment company. Carter is a securities broker-dealer.

Penn Mart seeks to recover for Glen Alden damages which it says the latter suffered because of the individual defendants' gross negligence and waste of corporate assets. It charges the corporate defendants with knowingly assisting in the directors' alleged breaches of their fiduciary duty.

IDS and Investors have moved to dismiss the complaint as to them on the alternative theories that it either fails to state a claim upon which relief can be granted, or that the matter has been concluded between them and plaintiff by the decision of the Federal District Court for the Southern District of New York in Penn Mart Realty Company v. Becker, 300 F.Supp. 731 (S. D.N.Y.1969). This is the decision on that motion.

The controversy centers about the following series of events. Between February 1, 1968 and February 23, 1968 Glen Alden acquired, through Carter as broker, 92,700 shares of common stock of Schenley Industries, Inc., in open market transactions on the New York Stock Exchange. On February 8, 1968 a meeting, arranged by Carter, was held between Glen Alden and representatives of IDS and Carter. Penn Mart says that at this meeting and thereafter Glen Alden disclosed to IDS and Carter inside information concerning its affairs, its subsidiaries and other companies in which it has an interest.

On March 14, 1968, Glen Alden sold to Investors the block of 92,700 shares of Schenley common stock which it had acquired during the previous month. The sale was made through Carter as broker in a New York Stock Exchange transaction at a market price of $63 per share.

On March 20, 1968, Glen Alden bought from Lewis S. Rosenstiel 945, 126 shares of Schenley common stock at a price of $80

per share (an aggregate purchase price of $75,610,080). On the following day Glen Alden announced its plans to make a tender offer to purchase all of the outstanding shares of Schenley common stock, at a price substantially equivalent to or in excess of $80 per share, payable partly in cash and partly in Glen Alden debentures.

Penn Mart claims that at the time of the February 8 meeting, Glen Alden knew of its plan to acquire the Rosenstiel shares and to make the tender offer, and that those plans were disclosed to IDS. Plaintiff says that Glen Alden's directors were grossly negligent and breached their fiduciary duties when, knowing that they would soon be purchasing the Rosenstiel shares at a price of $80 per share and would be offering to purchase all outstanding Schenley common at that same price, they made the March 14 sale to Investors at the considerably lower price of $63 per share, a difference of $17 per share or approximately $1,700,000 in the aggregate.

■ I consider first the defendants' motion under Chancery Rule 12(b)(6), Del. C.Ann., to dismiss the complaint for failure to state a claim. In considering such a motion, all inferences must be construed in favor of the plaintiff, and the complaint may not be dismissed unless it appears to a reasonable certainty that plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim. Jefferson Chemical Company v. Mobay Chemical Company, Del.Ch., 253 A.2d 512 (1969). It is against this standard that the theory of plaintiff's case against defendants must be tested.

■ Penn Mart argues that the Glen Alden directors were grossly negligent, wasted corporate assets, and therefore breached their fiduciary duty, by selling a corporate asset (the stock) to Investors at a price greatly less than what they knew, and had in fact determined, to be its true worth. Both Investors and IDS knew, says Penn Mart, that they were dealing

with fiduciaries, knew the true worth of the asset through their inside information, and nevertheless aided the directors in the breach of their duties. Thus, asserts Penn Mart, IDS and Investors are liable to the beneficiary of the fiduciary relationship, the corporation. The legal theory is sound. The directors of a corporation stand in a fiduciary relationship to the corporation's shareholders. Cahall v. Lofland, 12 Del.Ch. 299, 114 A. 224 (1921). And one who knowingly joins with any fiduciary, including corporate officials, in a breach of his obligation is liable to the beneficiaries of the trust relationship. Bogart, Trust and Trustees, § 901. Whatley v. Wood, 157 Colo. 552, 404 P.2d 537 (1965); Adams v. Smith, 275 Ala. 142, 153 So.2d 221 (1963); Cachules v. 116 E. 57th Street, Inc., 125 N.Y.S.2d 97 (Sup.1953). Cf. Baker v. Baker, 122 Misc. 757, 204 N.Y.S. 11 (1924), aff'd 212 App.Div. 850, 207 N.Y.S. 809 (Mem.).

In order to make out its case, Penn Mart must allege (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) knowing participation in that breach by the defendants. Bogart, *supra* § 901.

Defendants claim that the plaintiff must allege either that "the IDS—Glen Alden negotiations were not conducted at arms length [or] that IDS exerted an influence over the directors sufficient to infect their action with vitiating conflict of interest." They argue that because Penn Mart has made no such allegations of fraud or self-dealing (or is barred from making them under the doctrines of res judicata or collateral estoppel), it has failed to state a good cause of action.

■ That argument cannot prevail. Fraud and self-dealing are not the only ways in which corporate directors may breach their fiduciary duty; they may also breach that duty by being grossly negligent or by wasting corporate assets. Fletcher, Cyclopedia Corporations § 1011. See Adams v. Smith, *supra,* and Cachules v. 116

E. 57th Street, Inc., *supra*. This is what Penn Mart has alleged, and the necessary elements are therefore made out.

■ It is true that the directors are accorded a presumption of having acted in good faith and in the interests of the stockholders, and may also avail themselves of the benefit of the business judgment rule. But the ultimate effect of those doctrines upon the directors' liability is not, as defendants concede in their briefs, the matter here to be decided. I cannot say that those doctrines and the fact that the sale to Investors was made at market price establish as a matter of law that there was no breach of the directors' duty, and the question is not otherwise ripe for decision.

I am not persuaded by defendants' argument that an ultimate decision of liability as to them in this case would cause an intolerable conflict between their fiduciary duty to their own shareholders (in obtaining the best price for stock purchased) and their duty to refrain from participating in another's breach of fiduciary duty. For purposes of this motion, plaintiff's allegations must be taken as true, and the circumstances they portray show no such fiduciary conflict.

■ I am therefore not satisfied that plaintiff would not under any state of facts provable in support of its claim be entitled to relief. Therefore, the motion to dismiss under Rule 12(b)(6) must be denied.

I now consider defendants' argument that plaintiff is barred from asserting this claim by the doctrines of res judicata and collateral estoppel as a result of the district court's opinion in Penn Mart Realty Company v. Becker, *supra*. In that case, plaintiff advanced two claims. The first was a federal cause of action brought under § 10(b) of the Securities Act of 1934. 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. 240 10–5. The second was a common law claim, joined with the federal claim under the doctrine of pendent jurisdiction.

The district court dismissed that complaint, holding that plaintiff had failed to make out a federal cause of action under Rule 10b–5. Because the standard of fraud under Rule 10b–5 is more lenient than that required to establish common law fraud, it follows that the parties are certainly concluded as to any allegations of fraud. See II Loss, Securities Regulation 1019.

■ When the district court found that plaintiff had failed to state a cause of action under Rule 10b–5 (the federal claim), it followed that it had no jurisdiction over the common law claim. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiff therefore could not have been concluded as to any theory at common law, except as to any based upon fraud.

The result is that plaintiff is indeed barred from any assertions of fraud as to these defendants but is free to advance other theories of liability in this court. This it has done, its theory being based upon gross negligence and waste.

Defendants' motion to dismiss is therefore denied.